Christine **VAUGHN**, Plaintiff,

v.

**WESTINGHOUSE ELECTRIC CORP.**, Defendant.

No. LR–C–74–215.

United States District Court, E. D. Arkansas, W. D.

Nov. 25, 1981.

John Walker, Zimmery Crutcher, Jr., Little Rock, Ark., Clyde E. Murphy, New York City, for plaintiff.

James Moore, Tucker Raney, Walter Paulsen, Friday, Eldredge & Clark, Little Rock, Ark., for defendant.

OPINION ON ATTORNEYS' FEES

ARNOLD, Circuit Judge.

On September 30, 1981, this Court filed its opinion on remand, finding that defend-

ant had disqualified the plaintiff Christine Vaughn as a sealex operator in part because of her race. *Vaughn v. Westinghouse Electric Corp.*, 523 F.Supp. 368 (E.D.Ark. 1981). The Court directed counsel for plaintiff to file, on or before October 15, 1981, a memorandum, supported by affidavit, setting forth her position as to back pay and attorneys' fees. Defendant was given until October 30, 1981, to reply. The times for both sides' submissions were subsequently extended, and the last filing was made on November 4, 1981. The Court has already held that plaintiff is entitled to an award of attorneys' fees. The question to be decided is the amount.

## I.

Before discussing the fee award, it is appropriate to deal with the question of back pay. The sum of $1,696.25 has already been awarded, representing back pay to and including May 30, 1979. Plaintiff states (Memorandum of Mr. Crutcher, October 14, 1981, p. 2) that "[c]ounsel for defendant has agreed to provide ... information" as to back-pay entitlement since that first computation was made. No such information has been provided. The Court is therefore not in a position to make a specific monetary award for back pay that has accrued since May 30, 1979. The judgment will therefore simply award plaintiff $1,696.25, plus interest at the rate of ten per centum per annum from and after May 30, 1979, until payment is made. The judgment will also recite that plaintiff is entitled to recover an additional sum equal to the difference between her actual earnings at Westinghouse, and what she would have earned as a sealex operator. This amount of money will continue to run until plaintiff is reinstated as a sealex operator, or until she is offered reinstatement and refuses it. The fact that the amount of back pay, to a degree, will thus remain open to computation will not impair the finality of this Court's judgment, in my opinion. There will almost always be some such loose end in cases awarding back pay.[1]

## II.

Defendant first asserts that only time spent by plaintiff's counsel after remand from the Supreme Court and the Court of Appeals should be considered. It claims that three categories of services, for various reasons, cannot now be considered for compensation. The contested categories are (1) services rendered by counsel for plaintiff before this Court's first judgment was entered in 1979; (2) services rendered by counsel for plaintiff-appellee on the defendant's unsuccessful appeal to the Court of Appeals; and (3) services rendered by counsel for plaintiff-respondent in attempting to defeat defendant's partially successful petition for certiorari in the Supreme Court. For the reasons that follow, this Court is of the opinion that all of these contested categories of legal services remain compensable.

## A.

Westinghouse first points out that counsel for plaintiff did not ask this Court for an award of attorneys' fees for services rendered in this Court until many months had elapsed after the entry of judgment in May of 1979. In fact, no request for fees, other than a *pro forma* prayer for relief in the complaint, was made until after this Court's judgment had been affirmed by the Court of Appeals. At that point defendant objected to any award, asserting that the request was untimely because (1) it had not been made within ten days of the entry of judgment, as required by Fed.R.Civ.P. 59 for motions to alter or amend a judgment, and (2) it was not accompanied by any statement of reasons sufficient to qualify it for extraordinary relief under Fed.R.Civ.P. 60(b). Counsel for plaintiff countered with an affidavit to the effect that one of this Court's law clerks had advised him that it was all right to wait to file his request for an allowance of fees. The law clerk involved filed his own affidavit, stating that

---

1. Defendant's Memorandum of November 4, 1981, p. 9, seems to say that plaintiff has already been offered and has declined the sealex

position. If so, defendant may file a timely post-judgment motion for amendment of these findings and modification of the judgment.

no such advice had been given, whereupon this Court, feeling that it would give at least the appearance of impropriety for it to sit in judgment on the credibility of one of its own employees, recused itself. The case was then reassigned to another judge for a ruling on the then-pending question of attorneys' fees. In the meantime, however, defendant was prosecuting its petition for certiorari in the Supreme Court, which petition was ultimately granted. The Supreme Court vacated the judgment of the Court of Appeals and remanded the case to that Court for reconsideration. The Court of Appeals, in turn, as recounted in this Court's previous opinion on remand, remanded the case to this Court. At that point the undersigned judge took charge of the case again, believing that the timeliness issue had become moot, thus removing any necessity for me to decide whether to take my law clerk's word against counsel's.

■ The Court remains persuaded that the timeliness issue asserted by defendant is no longer in the case. The Supreme Court has vacated the judgment of the Court of Appeals affirming this Court's original judgment, and the order of the Court of Appeals in effect does the same thing to this Court's May, 1979 decision. Thus, there will be no final judgment until this Court again enters judgment as a result of the proceedings on remand. Even if defendant were right in its contention that the request for attorneys' fees must be made within the time prescribed in Rule 59, the request in the instant case, which has been made before the entry of judgment on remand, would not be untimely. In addition, the law in this Circuit has now become clear that the Rule 59 ten-day time limit does not apply to requests for attorneys' fees in this kind of case. In *Obin v. District No. 9 of the International Association of Machinists and Aerospace Workers*, 651 F.2d 574 (8th Cir. 1981), the Court of Appeals, disagreeing with the First Circuit's ruling in *White v. New Hampshire Department of Employment Security*, 629 F.2d 697 (1st Cir. 1980), *cert. granted*, 451 U.S. 982, 101 S.Ct. 2313, 68 L.Ed.2d 839 (1981), held that attorneys' fees are allowed as part of

the award of costs to a prevailing party. Accordingly, the rule in this Circuit is that the Rule 59 time limit does not apply to such requests, and that, in fact, there is no fixed time limit on an application for an award of attorneys' fees. This Court is bound by *Obin*. Defendant's position that this Court should not at this time consider an award of fees for services rendered before its first judgment was entered must therefore be rejected.

**B.**

■ The next category of fees contested relates to services rendered on the appeal from this Court to the Court of Appeals. The opinion of the Court of Appeals does not mention the question of fees, and the mandate makes an allowance of costs without referring to the subject. Counsel for plaintiff claim that they asked for fees in their brief in the Court of Appeals. Defendant counters that, if this is true, the opinion of the Court of Appeals, by not mentioning the subject, must be taken to have denied plaintiff's request. Defendant also notes that, in general, it is for the Court of Appeals, not a district court, to award fees for services rendered by counsel on appeal. See *Cleverly v. Western Electric Co.*, 594 F.2d 638 (8th Cir. 1979).

The Court is not persuaded by these arguments. At the time of the Court of Appeals' opinion in this case, there was a good deal of confusion as to the proper procedure and time limits applicable to requests for attorneys' fees. Whether the judges who sat on the appeal ever consciously considered the question of attorneys' fees, cannot now be determined, but it seems extremely unlikely to me that they actually considered the question and decided to make no award. Probably they did not actively consider the issue at all, and counsel for plaintiff can properly be faulted for not specifically bringing the matter to the attention of the Court of Appeals by way of post-judgment affidavit. That is the presently customary and preferred procedure. In the present posture of the case,

though, either this Court must make an award of fees for counsel's successful defense of defendant's appeal, or no award will be made, because the Court of Appeals' mandate has long since come down (for the second time), and that Court no longer has jurisdiction of the case. It would not be possible for counsel to apply now to the Court of Appeals for an allowance of fees for services rendered on the appeal during 1979 and 1980. The Court believes that the remedial purposes of Title VII would best be served by considering what award of fees is reasonable and proper, instead of rejecting the request altogether. This treatment of the matter seems more in accord with the spirit of the *Obin* opinion. The result is one with which this Court is not completely comfortable, but it seems to be the best solution now available.

### C.

Finally, defendant asserts that this Court should not award any fees for services performed by counsel for plaintiff in the Supreme Court. In that Court, of course, if there was a prevailing party, it was defendant, because defendant's petition for certiorari was granted, and the judgment of the Court of Appeals was vacated. Defendant points out, in addition, that the mandate of the Supreme Court awards to it $200 in costs, another indication that it was regarded by the Supreme Court as the prevailing party on the petition for certiorari.[2] Again, this Court must disagree with defendant, though its position is not wholly without merit. The question of who is the "prevailing party" should be determined as to a case as a whole, not as to individual segments of the case. The Supreme Court's order granting certiorari and remanding for further consideration was not the end of the war, but only of one battle. That defendant prevailed in this battle does not mean that plaintiff is not the prevailing party in the war as a whole. This Court, in obedience to the Supreme Court's mandate, has reconsidered its previous opinion and

has, for reasons already given, reinstated a judgment in favor of plaintiff. She is therefore the prevailing party, whatever may have been the intermediate stages of the litigation. It is of some moment, in addition, that the Supreme Court's order did not reverse the judgment of the Court of Appeals, but merely vacated it and remanded the case for reconsideration in light of an intervening Supreme Court opinion. Again, there are some practical difficulties with this solution. This Court, for example, is hardly in a position to judge the quality of services rendered before the Supreme Court. On the other hand, the Supreme Court, like the Court of Appeals, has long since lost jurisdiction of the case, and there is no reasonably possible means for counsel for plaintiff to apply to the Supreme Court for an award of fees, at this point. The Supreme Court would probably choose not to involve itself in that kind of fact-finding function, in any case. On the whole, the better solution seems to be for this Court to make an award of fees for services rendered on behalf of plaintiff in the Supreme Court. These services appear reasonable in amount, so far as the time expended is concerned, and the Court does not understand defendant to contend to the contrary. Defendant's position that this Court should not consider an award of fees for services rendered in the Supreme Court is therefore rejected.

### III.

I turn now to a consideration of the specific requests for reimbursement made by each of the three lawyers for the plaintiff who have filed affidavits, Zimmery Crutcher, Jr., John Walker, and Clyde Murphy. To begin with, the Court does not agree that there has been any duplication in these attorneys' services. This litigation, which was commenced with the filing of a charge in 1972 before the Equal Employment Opportunities Commission, has been protracted and difficult. Plaintiff has been faced with tenacious and resourceful opposition at

---

2. Defendant says this $200 has never been paid. It will be deducted from the award for

costs and expenses computed later in this opinion.

every stage of the case. Yet, during most of the trial, only one lawyer for plaintiff was in the courtroom. Defendant has been represented by a number of lawyers throughout the course of the litigation, and plaintiff should not be penalized for seeking similar assistance.

Fee requests of this kind are to be judged according to familiar principles. It is the duty of the Court first to fix a reasonable hourly rate for the services of each of the lawyers, and then to multiply these hourly rates by the numbers of hours that the Court finds have been reasonably spent on the prevailing plaintiff's case. The resulting product is "presumptively a base figure to be awarded by the court." *Taylor v. Jones*, 495 F.Supp. 1285, 1297 (E.D.Ark.1980), aff'd, 653 F.2d 1193, 1205–06 (8th Cir. 1981). The resulting figure, however, is not to be invariably awarded. It is still incumbent on the Court to consider the various factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which has been followed in this Circuit. See *Taylor v. Jones, supra*, 653 F.2d at 1205; *Taylor v. Teletype Corp.*, 492 F.Supp. 405, 406 (E.D.Ark.1980), aff'd in part on other issues, 648 F.2d 1129 (8th Cir.), cert. denied, —— U.S. ——, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981).

It is first appropriate to address the allowable hourly rate for each of the attorneys. Mr. Crutcher requests compensation at the rate of $75 an hour. Mr. Crutcher has conducted himself competently and effectively, and the Court believes, based on its knowledge of the abilities of lawyers of similar experience in this area, that a rate of $45 an hour in court and $40 out of court would be appropriate. Mr. Walker seeks reimbursement at the rate of $125 an hour

for partners' time, and $90 an hour for associates' time. If all of the services rendered in this case were being rendered in 1981, the Court could agree that $125 an hour would be an appropriate rate for Mr. Walker, because his abilities and experience place him in the first rank of the bar. Since many of the services were performed years ago, however, the fair rate, in the Court's opinion, would be $85 an hour in court and $60 out of court.[3] Mr. Murphy requests reimbursement at the rate of $100 an hour. The Court is not personally acquainted with Mr. Murphy. The brief filed for plaintiff on remand, which the Court understands to be primarily Mr. Murphy's work, evinces a high degree of skill, but Mr. Murphy has been out of law school only six years, and the Court is unwilling to award him a fee in excess of that earned by Mr. Crutcher, who has also been at the bar a relatively short length of time. Mr. Murphy's time will therefore be computed at the rate of $40 an hour. All of Mr. Murphy's work was out of court.

Mr. Crutcher makes a total request of $12,450, claiming 166 hours of work at $75 an hour. It must be recalled, at this point, that there were originally three plaintiffs in this case, only one of whom, Ms. Vaughn, has prevailed. In addition, plaintiffs were unsuccessful on their motion for class certification, and some of the effort of counsel for plaintiff was directed against a union co-defendant, which is no longer in the case. The Court has reviewed Mr. Crutcher's affidavit and finds that only 40 of the 166 hours claimed are properly allocable to time in court. The trial took five days, and eight hours for each day of trial is an ample allowance for this purpose. Of the remaining 126 hours, six hours are applicable exclusively to the class-action question, with respect to which plaintiff did not prevail.[4]

---

**3.** In *Taylor v. Jones, supra*, 495 F.Supp. at 1297, this Court awarded fees for Mr. Walker's services at the rate of $75 an hour in court and $50 out of court. The Court believes that a differential between in-court time and out-of-court time would be made in billing by lawyers of the first rank in the Little Rock area. *Taylor* was decided over a year ago. Rates should be somewhat higher now.

**4.** Six hours is the Court's estimate of time reasonably necessary to perform the services listed by Mr. Crutcher under dates of February 17, March 1–3, and March 21, 1979, on p. 1 of his affidavit.

Mr. Crutcher's 40 hours in court, at a rate of $45 an hour, amount to $1,800. The 120 hours out of court, at a rate of $40 an hour, amount to $4,800. The total of these two sums is $6,600. This figure, however, should be reduced to some extent, because it would be unfair to make Westinghouse pay a fee for services rendered on behalf of losing plaintiffs, or against another party defendant. It is impossible to allocate services with precision, but the Court finds, based upon its examination of each item in the attorneys' affidavits and on its recollection of the trial and pre-trial proceedings, that about 80% of the services rendered, up to and including the trial of this case, would have been necessary even if there had been only one plaintiff. The $6,600 figure will therefore be reduced by $952,[5] producing a fee allowance for Mr. Crutcher of $5,648.

Mr. Walker asserts by affidavit that his time, and that of certain other lawyers formerly associated with him, amounts to 167.5 hours of partners' time and 23.75 hours of associates' time. Only ten hours of these services, all of it Mr. Walker's personal time, was spent in court. The Court allows a base figure of $850 for these ten hours of in-court time. Of the remaining 157.5 hours of partners' time claimed, the Court finds, from an inspection of each item listed in Mr. Walker's affidavit, that 40.25 hours are allocable exclusively to the class-action question or to the union codefendant. The out-of-court time remaining is 117.25 hours, which, at a rate of $60 an hour, would amount to $7,035. All of the deductions attributable to services rendered in connection with the class-action question and the co-defendant appear to be composed exclusively of partners' time. For the associates' time of 23.75 hours, all of which was ex-

pended out of court, the Court awards $40 an hour, for a total of $950. The total base award would be $8,835, when these three sums are added up, but, for reasons stated above, the Court believes that this award should be further reduced to reflect the fact that some of the time spent is fairly attributable to the non-prevailing plaintiffs. The appropriate deduction is $1,503,[6] and the resulting award of fees to Mr. Walker is $7,332.

It may be observed at this point that the Court's task would have been greatly aided had Mr. Crutcher's and Mr. Walker's affidavits been more precise. In Mr. Walker's case, the imprecision is excused, at least in part, by the fact that many of the services were rendered before 1976, when the Civil Rights Attorneys' Fees Awards Act was enacted, so there was little reason for time records to be kept for these early services. In the case of both affidavits, however, there are some dates and descriptions of services rendered that do not indicate a specific amount of time expended on the particular date for the particular service listed. Instead, time seems to have been added up for blocks or groups of dates and services. Plaintiff, of course, has the burden of proof on the issue of attorneys' fees, and the Court cannot properly be asked simply to assume that certain kinds of services would require a certain amount of time. The Court has attempted to describe in as much detail as possible the mental process by which the figures that are to be awarded have been reached, but the process inescapably remains inexact to some degree.

In the case of Mr. Murphy's affidavit, however, there is no such imprecision. He lists each date when services were per-

---

5. Mr. Crutcher's time up to and including the end of trial was 114 hours, 40 hours in court and 74 hours out of court. At a rate of $45 an hour in court and $40 an hour out of court, this time would be worth $4,760. One-fifth of this amount is $952.

6. Mr. Walker's affidavit shows 23.75 associates' hours out of court up through the end of the trial, which would be worth $950 at $40 an hour. Partners' time for the same period appears to be 145.5 hours, from which the Court

has already deducted 40.25 hours allocable to the class-action issue and the union co-defendant, leaving 105.25 hours, of which 10 are in court and 95.25 out of court. These blocks of time would be worth $850 (10 × $85) and $5,715 (95.25 × $60) respectively, for a total of $6,565. The total of associates' time, $950, and partners' time, $6,565, up through the end of trial, comes to $7,515. One-fifth of this amount is $1,503.

formed, the nature of the services performed on that date, and the amount of time required. A total of 71.71 hours is claimed, which would be a reasonable total for the research and drafting for which Mr. Murphy was responsible, but the Court's addition of the numbers contained in his affidavit yields a total of only 68.75 hours. The latter figure will be taken as the proper total, and, when multiplied by $40, for out-of-court services, yields a total fee award of $2,750. All of Mr. Murphy's services were rendered either in the Supreme Court or in this Court on remand, so no reduction will be made to take account of other parties or issues.

As to expenses, Mr. Crutcher's affidavit claims a total of $1,021.25, and no particular item listed by Mr. Crutcher is contested by defendant. The award will include the claimed sum of $1,021.25 for expenses. Mr. Walker claims $286 for expenses. Of this amount, the filing fee and Marshal's service, two items totaling $20, appear to be duplications of costs included in Mr. Crutcher's listing. They will therefore be disallowed. Mr. Walker claims deposition expense of $200, which defendant suggests is a duplication of a deposition expense listed by Mr. Crutcher, but Mr. Crutcher's deposition expense is different in amount ($120), so it appears to the Court that two different depositions are involved. Expenses will therefore be allowed in the additional amount of $266, for a total of $1,287.25, from which the $200 unpaid from the Supreme Court will be taken away.

The fact remains that an award of fees in a case such as this cannot be altogether a matter of mathematics. It is still necessary for the Court to review the award in light of the services rendered and the nature of the case, and to apply the various factors listed in *Johnson v. Georgia Highway Express, Inc., supra.* The Court has reviewed these factors and does not believe that any of them should operate either to reduce or increase the awards listed above. Counsel for plaintiff suggest that a multiplier of 20% should be added to take account of results achieved, but the Court cannot agree. This case, as it ended up, was simply an individual claim for a violation of

Title VII. No class relief was obtained, nor was any wide-ranging principle established by the litigation. Defendant, on the other hand, points to the $1,696.25 awarded in back pay at the time of the entry of this Court's first judgment, and suggests that counsel's fee should be no greater. It is true that one of the factors properly to be considered is the results obtained, including the amount of money recovered for the individual plaintiff. The Court cannot agree, however, that the importance of these cases can be measured exclusively by that standard. Although the amount of money recovered by the plaintiff is small, at least relatively so, the results achieved include her promotion to a better job. They also include a finding that the defendant has violated Title VII, which embodies a policy considered by Congress to be of great importance. The granting of even individual relief in a case of this kind can improve the quality of life for all citizens, and the Court is mindful that plaintiffs in these cases act, in part, as private attorneys general. On the whole, therefore, the amounts listed above as compensation for the various attorneys' time and expenses are reasonable, and judgment will be entered accordingly.