**Bradley WHITE, Plaintiff,**

v.

**Madeline L. MARTIN, individually as trustee and fiduciary of the Bob Martin Trucking, Inc. Profit Sharing Plan, Defendant.**

**No. Civ. 99–1447 JRTFLN.**

United States District Court,
D. Minnesota.

Sept. 3, 2003.

Steven E. Rau, Flynn, Gaskins & Bennett, L.L.P., Minneapolis, MN, Matthew B. Newman, Newman Law Office, Savage, MN, for plaintiff.

Mark D. Wisser, Anthony Ostlund & Baer, P.A., Minneapolis, MN, for defendant.

## MEMORANDUM OPINION AND ORDER ON INTEREST AND ATTORNEYS' FEES

TUNHEIM, District Judge.

Plaintiff Bradley White ("White") brought this action against defendant Madelaine L. Martin ("Lyn Martin") individually and in a derivative capacity on behalf of all the participants of the Bob Martin Trucking, Inc. Profit Sharing Plan ("Plan"). Following a bench trial, the Court issued its Findings of Fact and Conclusions of Law on March 31, 2003. *See White v. Martin*, 286 F.Supp.2d 1029, 2003 WL 22145584 (D.Minn.2003) ("March 31 Order"). The Court found that Lyn Martin breached her fiduciary duty under § 404 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104, and her co-fiduciary duty under ERISA § 405, 29 U.S.C. § 1105. The Court ordered that Lyn Martin was liable to the Plan for the losses that resulted from her breaches. The Court further ordered the parties to submit briefing on any appropriate interest rate to apply to the sums that Martin owes. The Court now considers that question, as well as plaintiff's application for an award and approval of attorneys' fees pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1).

### BACKGROUND

In its March 31 Order, the Court found against Lyn Martin on three grounds. First, the Court determined that Lyn Martin breached her fiduciary duty of prudence under ERISA § 404 by causing the Plan to engage in prohibited transactions that violate ERISA § 406, 29 U.S.C. § 1106. (*See* March 31 Order at 13–16.) These prohibited transactions were the Exercises of Guarantee by Wellington West Capital ("Wellington"), by which money was removed from the Plan's assets and transferred to Bob Martin's personal

investment account, resulting in a loss to the Plan of $341,971.99. (*Id.* at 30.)

Second, the Court found that Lyn Martin breached her fiduciary duty by investing Plan assets through Wellington, a Canadian firm, thereby incurring a ten percent non-resident tax on certain dividends. (*Id.* at 20–21.) This resulted in a loss to the Plan of $3,470.75. (*Id.* at 21, 30.)

Third, the Court found that Lyn Martin breached her co-fiduciary duty under ERISA § 405 by permitting and failing to prevent Bob Martin from executing the Wellington Exercises of Guarantee, as well as a wire transfer in June 1998 that resulted in a loss to the plan of $100,000.00. (*Id.* at 26–27, 30.)

## I. Prejudgment Interest

■ "The question of whether interest is to be allowed, and also the rate of computation, is a question of federal law where the cause of action arises from a federal statute." *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1218 (8th Cir.1981). ERISA does not expressly authorize prejudgment interest, but such awards are permitted under ERISA § 502(a)(3)(B), which provides for "other appropriate equitable relief." 29 U.S.C. § 1132(a)(3)(B). *See Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1330 (8th Cir. 1995). The decision whether to award interest thus lies within the district court's discretion. *Id.* at 1331. The Eighth Circuit has stated that prejudgment interest is designed "to serve at least two purposes: to compensate prevailing parties for the true costs of money damages incurred, and, where liability and the amount of damages are fairly certain, to promote settlement and deter attempts to benefit unfairly from the inherent delays of litigation." *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 752 (8th Cir.1985). The court of appeals has held

that prejudgment interest "should ordinarily be granted unless exceptional or unusual circumstances exist making the award inequitable." *Id.* At the same time, however, the Eighth Circuit has held that "a common thread throughout the prejudgment interest cases is unjust enrichment—the wrongdoer should not be allowed to use the withheld benefits or retain interest earned on the funds during the time of the dispute." *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 946 (8th Cir.1999). In *Kerr*, the Eighth Circuit held that a claimant should not receive prejudgment interest because the wrongdoer "did not keep the earnings or have use of [claimant's] funds during the delay period." *Id. Cf. Stroh Container*, 783 F.2d at 752 (noting that an important factor in award of interest was the fact that the wrongdoer "had the use of the money in the interim and has thereby been unjustly enriched...."); *Short v. Central States, Southeast & Southwest Areas Pension Fund*, 729 F.2d 567, 576 (8th Cir.1984); *United States v. Motor Vessel Gopher State*, 614 F.2d 1186, 1190 (8th Cir.1980).

■ The Court finds that awarding interest is not appropriate in this case, primarily because no unjust enrichment has occurred. Based on the evidence presented at trial, the Court found that Lyn Martin breached her fiduciary duties by permitting Bob Martin to withdraw funds from the plan, and by negligently making investments that incurred an unnecessary tax. While these breaches did cause the Plan to lose money, Lyn Martin never kept or had use of any of the funds. The funds lost to the Plan from Canada's non-resident tax went to the Canadian government, not Lyn Martin. The funds from the Exercises of Guarantee and the June 1998 wire transfer went directly to Bob Martin; no evidence was presented that Lyn Martin ever obtained or used any of

these funds. Thus, as in *Kerr,* Lyn Martin was not unjustly enriched through her violations of ERISA, and therefore an award of interest is not appropriate.

Accordingly, the Court finds that the total amount of damages to which plaintiff is entitled from Lyn Martin is $187,085.95.[1]

## II. Attorneys' Fees

Pursuant to the Court's March 31 Order, White has submitted an application for award of attorneys' fees.[2] Section 502(g)(1) of ERISA permits the Court to grant reasonable attorneys' fees and costs to either party. 29 U.S.C. § 1132(g)(1). Although courts in this circuit formerly presumed that prevailing parties were entitled to attorneys' fees in ERISA cases, the Eighth Circuit recently held that no such presumption applies. *See Martin v. Arkansas Blue Cross & Blue Shield,* 299 F.3d 966, 971–72 (8th Cir.2002). The decision whether to award attorneys fees is thus committed to the Court's discretion. *Hogan v. Raytheon Co.,* 302 F.3d 854, 857 (8th Cir.2002). In exercising this discretion, the Court considers five factors: (1) the degree of Lyn Martin's culpability or bad faith; (2) Lyn Martin's ability to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees could deter other persons acting under similar circumstances; (4) whether White sought to benefit all participants and beneficiaries of the Plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Lawrence v. Westerhaus,* 749 F.2d 494, 496 (8th Cir.1984); *Dasler v. E.F. Hutton,* 698 F.Supp. 172, 175 (D.Minn.1988). These factors are general guidelines, and are "by no means exclusive or to be mechanically applied." *Martin,* 299 F.3d at 972.

Upon considering the *Westerhaus* factors, the Court determines that White should be granted reasonable attorneys' fees. First, although there is no significant evidence of bad faith by Lyn Martin, the evidence at trial did conclusively show that she breached her fiduciary duties to the Plan, thus establishing some culpability. Next, Martin concedes that she has the ability to pay any award against her. The Court also finds that an award of attorneys' fees in this case will serve a significant deterrent effect. It is true that

---

1. As discussed in the March 31 Order, this represents the total losses to the Plan resulting from Lyn Martin's breaches, less 58%. The Court determined that because Bob Martin's vested interest in the Plan constituted 58% of the Plan's total value, it would be inequitable to hold Lyn Martin liable for her co-fiduciary's interest in the Plan. Therefore, the calculation is as follows (all sums rounded to the nearest cent):

$ 341,971.99 (Wellington Guarantees of Account)
+
$ 100,000.00 (June 1998 Wire Transfer)
+
$     3,470.75 (Canadian NRT)

$ 445,442.74 Total Losses
$-258,356.79 (less 58%)

Total Damages = $ 187,085.95

2. Defendant argues that White's application for fees must be rejected because it is not a "motion," as required by this Court's Local Rules. *See* D. Minn. LR 54.3(b)(1). The Court finds this hyper-technical argument to be without merit. Plaintiff's application for attorneys' fees fulfills all the substantive requirements of Local Rule 54.3(b), and the Court finds that it satisfies the Rule. To the extent that Plaintiff's submission may not comply with the Rule, the Court finds good cause to excuse any such failure. *See* D. Minn. LR 54.3(b)(3).

Lyn Martin's breaches resulted largely from mismanagement, negligence, and possibly excessive trust in her ex-husband and co-fiduciary. While these factors might mitigate any finding of bad faith, however, they do not change the fact that Lyn Martin owed a duty to the Plan and its participants, a duty that she failed to keep. Awarding attorneys' fees in this case will serve as a deterrent and notice to other ERISA fiduciaries that they must remain scrupulously informed on all matters that relate to their fiduciary duties, so that they do not harm their plans or participants. The Court further finds that by this lawsuit, White clearly sought to benefit all participants and beneficiaries of the Plan; the damages he recovers will go directly into the Plan's assets and eventually be distributed to the participants. Finally, the Court notes that the relative merits of the parties' positions was decided in plaintiff's favor at trial. Plaintiff prevailed on the claims of fiduciary and co-fiduciary breach, although he did not prevail on his claim for administrative penalties against Lyn Martin. Based upon these factors, the Court concludes that White is entitled to reasonable attorneys fees under ERISA § 502(g)(1).

■■■ The Court must next determine what amount of fees is reasonable. "The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." *Jenkins v. State of Missouri*, 127 F.3d 709, 716 (8th Cir.1997). In cases where the plaintiff has lost some issues that are unrelated to those on which the plaintiff has won, the Court must treat the unrelated issues as if they were separate cases, and cannot award fees based upon them. *Jenkins*, 127 F.3d at 716. However, claims that "involve a common core of facts or [are] based on related legal theories," deserve compensation even if they were not successful. *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d

40 (1983); *Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir.2001). Although fees may be reduced where a plaintiff has limited success, "[w]here a plaintiff has won substantial relief . . ., he 'should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.'" *Dasler*, 698 F.Supp. at 177 (quoting *Hensley*, 461 U.S. at 440, 103 S.Ct. 1933).

■■■ In this case, all of White's claims involved a common core of facts—Lyn Martin's mishandling of the Plan's assets. White alleged that Martin controlled all aspects of the Plan, from its investments to its administration. White succeeded on his claims that related to Lyn Martin's fiduciary duties, but he did not establish that she was the Plan Administrator. Thus, White succeeded in two of his three principal claims, breach of fiduciary and co-fiduciary duties, even if he did not succeed on every alternative basis for those claims. The Court therefore finds that White has won substantial relief, and that he is entitled to a fully compensatory fee award. *See Hensley*, 461 U.S. at 435, 103 S.Ct. 1933; *Jenkins*, 127 F.3d at 716.

■■■ White seeks a total of $254,793.75 in attorneys' fees. This represents the time of attorney Steven Rau ("Rau") at his firm's normal billing rate of $325 per hour, combined with lower rates for another attorney and a legal assistant. The sum also represents the time of plaintiffs' ERISA attorney Matthew Newman. Defendant objects to Rau's rate of $325 per hour, arguing that it should not be adopted because it is higher than when this case was initiated. Defendant also argues that the rate is unreasonable. The U.S. Supreme Court has held that in civil rights cases where fees have risen over the duration of a case, it is appropriate to apply current rates rather than historical ones. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283–84, 109 S.Ct. 2463, 105

L.Ed.2d 229 (1989); *Little Rock Sch. Dist. v. State of Arkansas*, 127 F.3d 693, 697 (8th Cir.1997). At least two district courts in this circuit have extended the Supreme Court's reasoning to ERISA cases, and this Court agrees that it is applicable. *See McIntosh v. Pacific Holding Co.*, 12 F.Supp.2d 987, 992 (D.Neb.1998); *Lutheran Med. Ctr. of Omaha, Nebraska v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan*, 814 F.Supp. 799, 804 (D.Neb.1993). Therefore, the Court finds it appropriate to base the Rau's portion of the fee calculation on his current rate.[3] The Court further finds, based upon its experience and upon the affidavits submitted by plaintiff, that this rate is reasonable for this type of case in the Twin Cities metropolitan area. However, the Court declines plaintiff's invitation to increase the lodestar amount based upon any "exceptional success" or special circumstances. *See Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. Therefore, the Court finds that the normal hourly billing rates as set forth in the affidavits of Rau[4] and Matthew Newman are reasonable, and the Court will use them to calculate the award of attorneys' fees. The Court further finds that plaintiff's requested costs and expenses are reasonable. Based upon these submissions, the Court will award White attorneys' fees in the amount of $254,793.75,[5] and costs of $5,547.75.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Lyn Martin is **ORDERED** to remit to the Bob Martin Trucking, Inc. Profit Sharing Plan a total amount of $187,085.95 as damages in this case.

2. Prejudgment and postjudgment interest are **DENIED**.

3. Attorneys' Fees are **GRANTED** to plaintiff in the amount of $254,793.75.

4. Costs and expenses are **GRANTED** to plaintiff in the amount of $5,547.75.

5. Defendant is **ORDERED** to remit to plaintiff Bradley White a total amount of $260,341.50 for costs, expenses, and attorneys' fees.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

3. Defendant does not object to any of the other attorneys' rates.

4. Rau's affidavit contained an error in calculation that was corrected in a subsequent letter to the Court.

5. This also includes an additional, discounted amount of $5,000.00 in fees for preparation of these filings for the fee petition. The Court finds this amount reasonable, based on counsel's representation that this preparation took in excess of 40 hours. The attorneys' total fees are calculated as follows:

| Attorney | Rate (dollars per hour) | Hours | Fees |
| --- | --- | --- | --- |
| Steven E. Rau | $ 325.00 | 420.95 | $ 136,808.75 |
| Cynthia A. Bremer | $ 250.00 | 81.00 | $ 20,250.00 |
| Brigid M. Volk, legal asst. | $ 100.00 | 265.15 | $ 26,515.00 |
| SUBTOTAL | — | 767.10 | $ 183,573.75 |
| Matthew B. Newman | $ 300 | 214.6 | $ 64,380.00 |
| Sandra Pawlak, paralegal | $ 100 | 18.4 | $ 1,840.00 |
| SUBTOTAL | — | 233 | $ 66,220.00 |
| Fee petition preparation | | 40 | $ 5,000.00 |
| **TOTAL** | — | 1040.10 | **$ 254,793.75** |